UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| PAL ROLLINS,            )<br>                               )<br>    Plaintiff,           )<br>                               )<br>v.                             )<br>                               )<br>STATE FARM FIRE & CASUALTY )<br>COMPANY,                 )<br>                               )<br>    Defendant.           ) | CIVIL ACTION NO.<br>**4:10CV-40-HLM** |

**DEFENDANT STATE FARM FIRE & CASUALTY COMPANY'S BRIEF IN SUPPORT OF DAUBERT MOTION TO EXCLUDE THE EXPERT TESTIMONY OF JEFFERY FAVA**

**COMES NOW** State Farm Fire & Casualty Company (hereinafter "State Farm"), Defendant in the above-referenced case, and files its Brief in Support of its Daubert Motion pursuant to Federal Rules of Evidence 702, and other applicable law showing the Court as follows:

**I. STATEMENT OF FACTS**

State Farm insures the residence and property located at 1465 Walls Circle, Trenton, Georgia 30752 (the "Property"), under Policy No. 81-PE-5887-3 (the "Policy"). Plaintiff Paul Rollins ("Rollins") is the named insured under the Policy and resides at the Property. On or about April 10, 2009, the residence located on

1

the Property was struck and damaged by a falling tree.

Plaintiff's suit was initiated in the Superior Court for Dade County, Georgia, on March 4, 2010 and removed to this Court on the 5th day of April, 2010. Plaintiff alleges that Defendant improperly refused coverage of certain damage to the Property and that said refusal was in bad-faith. On December 10, 2010, the Court granted summary judgment in favor of State Farm on the issue of bad-faith refusal to pay. Document No. 56.

In his initial disclosures, Plaintiff identifies Mr. Fava as an expert witness and his initial report and estimate, dated December 17, 2009 (the "Initial Report") are attached as an Exhibit to the same. Document 7, at ¶ (4)a. In his response to State Farm's first interrogatories, Plaintiff states, "Mr. Fava will testify as an expert in construction and the business of construction in general." After the Court granted Defendant's motion to compel the same, Plaintiff produced Mr. Fava's report pursuant to Rule 26 of the Fed. R. Civ. P. (the "Rule 26 Report"). Pursuant to agreement of the parties and confirmed by notice of deposition, Mr. Fava's deposition was taken on November 3, 2010.

## II. ARGUMENT AND CITATION OF AUTHORITY

**A.     The Daubert Standard**

Rule 702 of the Federal Rules of Evidence governs the admission of expert

testimony and provides:

> *If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.*

In <u>Daubert v. Merrell Dow Pharmaceuticals</u>, the Supreme Court explained that to be admissible, expert testimony must be both reliable and relevant. 113 S. Ct. 2786, 2799 (1993). Thus, the standard for reviewing scientific evidence under <u>Daubert</u> is two-pronged. The first prong requires the district court to engage in a preliminary assessment of whether the evidence is reliable, meaning whether the reasoning or methodology underlying the testimony is scientifically valid. The second prong requires the district court to examine whether the evidence is relevant, meaning whether the reasoning or methodology can properly be applied to the facts in issue. <u>In Re: Polypropylene Carpet Antitrust Litigation</u>, 93 F. Supp. 1348, 1352 (N.D. Ga. 2000).

"To qualify to testify as an expert, a witness must be able to testify competently regarding the matters he or she intends to address by virtue of his or her education, training, experience, knowledge, or skill." <u>Id</u>. Rule 702, in conjunction with Rule 403 and 703, imposes a standard of evidentiary reliability

3

that requires "the Court's inquiry to focus not on whether the expert is correct, but on whether the proponent of expert testimony has established by a preponderance of the evidence that the testimony is reliable in the context of the methodologies or techniques applied within the appropriate field." Id. at 1352-1353.

To determine admissibility under Rule 702, a series of factors that may be used in assessing the reliability and relevancy of an expert witness's testimony have come down from Daubert and its progeny: (1) whether a theory or technique has been or may be tested, (2) whether a theory or technique has been subjected to peer review and publication, (3) the degree of acceptance within the relevant community, (4) the existence of standards designed to ensure the credibility or accuracy of a particular technique, (5) the likelihood of error or the likelihood that a particular technique may result in error, and (6) whether the methodology stands up to the standards applied within the relevant field.  This list is neither definitive nor exhaustive, but flexible, allowing the Court to exercise its gatekeeping inquiry "tailored to the facts of the case and the type of expert testimony at issue."  While the Court possesses considerable leeway in deciding whether particular testimony is reliable, "the Court's objective is to ensure that the expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id.

The party offering the expert testimony has the burden of demonstrating that the testimony is "relevant to the task at hand" and "logically advances a material aspect" of its case. See, Daubert, 113 S.Ct. at 2799; Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) (internal punctuation omitted). Further, the offering party must show that the opinion meets the Daubert criteria, including reliable methodology and helpfulness to the factfinder in understanding the evidence or determining a fact, by a preponderance of the evidence. Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005)

### B.  Mr. Fava Is Not Qualified to Testify Regarding Repair Costs

Mr. Fava's was hired to determine the repairability of Plaintiff's home and to provide a comparison of the repair cost of the residence versus the replacement cost. Fava Depo. at p. 24. However, Mr. Fava's background, reports, and testimony demonstrate a lack of qualification and a lack of reliability as to his analysis of the repair cost of Plaintiff's residence.

Mr. Fava visited the Property on only two occasions. Mr. Fava's first visit, in November, 2009, resulted in his production of the Initial Report. Fava Depo. at p. 20-21. The second visit, on January 19, 2010, was a group survey of the property with Plaintiff, Plaintiff's counsel and a State Farm representative. Id. at 18-20. Neither of his visits was made with the purpose of producing a repair

estimate for the home.  Id. at 18-20, 26.

Mr. Fava's Initial Report, dated December 17, 2009, included a summary statement of opinion regarding the repairability of the residence and an itemized estimate for the replacement of the home.  Id. at p. 25-26.  Significantly, the initial report included no estimate, itemization, appraisal or analysis related to the cost of repairing Plaintiff's home.  Mr. Fava admits that an itemized estimate for the repair of the home was not prepared for or requested by Plaintiff despite being hired to compare the cost of repair with the cost of replacement.  Id. at p. 24, 26.

Mr. Fava's Rule 26 Report, however, includes a summary estimate for the repair cost of the home.  The summary repair estimate is $175,116.00, $24,504.00 higher than Mr. Fava's estimated replacement cost.[1]  Exhibit 2 to Fava Depo.  The Rule 26 Report also attaches the Initial Report including the itemized replacement estimate.  The Rule 26 Report does not include any itemization for the repair estimate, nor does it provide any detail regarding how the repair estimate was determined.

In his deposition, Mr. Fava was unable to provide any basis or explanation for how the repair estimate was calculated.  For example, Mr. Fava was unable to

---

[1] The replacement cost estimate in the Rule 26 Report is the same as in the Initial Report. Notably, both the replacement and repair estimates far exceed the $100,000.00 policy limit on Plaintiff's residence.

6

fully explain how the difference in demolition costs was determined ($9,400.00 for replacement; $28,200.00 for repair). Mr. Fava admitted that mold abatement was included in the $28,200.00 repair demolition estimate but he could not identify how much was attributed to mold to any reasonable degree of certainty. Mr. Fava, unsure of whether or not he had any documentation of his mold figure, finally speculated, "I think it's around 25 percent, seems like it is a six or eight thousand dollar figure." Fava Depo. at p. 55. This type of guesswork falls short of the Daubert standard which requires that the testimony be "reliable in the context of the methodologies or techniques applied within the appropriate field". In Re: Polypropylene Carpet Antitrust Litigation, 93 F. Supp. at 1353. Here, Mr. Fava is unable to conclusively provide the amount attributed to mold, much less a methodology for determining that number.

Mr. Fava's repair estimate is similarly speculative with regards to how much of the existing structure would remain. Mr. Fava testified that his repair estimate was based leaving "[p]robably ten percent" of Plaintiff's existing structure in place. However he admits that that figure is mere speculation:

> Q: *So you can't state to a reasonable degree of building probability whether or not it would be ten percent or twenty percent or thirty percent?*
>
> A: *No, sir.*

7

Fava Depo. at p. 57.

In fact, Mr. Fava's entire repair estimate is speculative as he admits that he conducted no investigation to determine what the repair costs would be and he provides no explanation as to how the estimate was calculated:

> Q: *You don't have anything where you've gone out and conducted an investigation to determine what those costs would be, right?*
>
> A: *That is correct.*
>
> Q: *You don't have an itemized estimate to show me the methodology that you used to come up with that 175,116 number, correct?*
>
> A: *That is correct.*
>
> Q: *You can't tell me in any detail how you came up with that number other than it being an estimate, right?*
>
> A: *That is correct.*

Fava Depo. at p. 59.  Mr. Fava is unable to identify any theory, technique or methodology he used to determine his repair estimate.  Furthermore, Mr. Fava's repair estimate was first produced approximately nine months after his last visit to the Property and neither of his visits was for the purpose of creating a repair estimate.

Mr. Fava's analysis of the cost to repair Plaintiff's residence falls short each of the elements to qualify as expert testimony pursuant to Rule 702.  First, the

testimony is not based on sufficient facts or data because Mr. Fava did not visit the property to prepare a repair estimate and the estimate was prepared nine months after his last visit.  Second, the testimony is not the product of reliable principals and methods as Mr. Fava fails to identify any principles or methods used to prepare his estimate or otherwise explain how he determined the repair estimate.  Third, Mr. Fava cannot have reliably applied principles and methods to the facts of this case because none were identified.

Finally, Plaintiff cannot rely on Mr. Fava's experience as a residential home builder to qualify him as an expert in home repair.  Mr. Fava admitted that the 90 percent of his work was residential (as opposed to commercial) construction and that the vast majority of his residential work was new construction.  Fava Depo. at p. 8, 50.  Therefore, Mr. Fava has limited experience performing the repair work called for in this situation.  Indeed, Mr. Fava could not recall the last project he performed that was similar to a repair of Plaintiff's home and he speculated that he only performed two similar projects in the last five years.  Id. at p. 59-60.

**C.   Mr. Fava Is Not Qualified To Testify Regarding Habitability**

In both of his reports, Mr. Fava states "Mold is present throughout the structure and is present on the contents.  The house in its current condition is [un]inhabitable and worsens on a daily basis."  However, Mr. Fava admits that he

was neither qualified nor retained to give such opinions.

As stated above, Mr. Fava was retained to provide a cost comparison between replacing and repairing the home. Fava. Depo. at p. 24, 26. Mr. Fava admits that he is not an expert in structural engineering or mold remediation and that he is neither a professional engineer nor is he certified in mold abatement. Id. 24. Mr. Fava further admits that he would hire a certified mold abatement specialist and structural engineer to make determinations related to those issues. Id. at p. 24, 40.

Despite these admissions, Mr. Fava bases his opinion regarding the inhabitability of the house on mold and structural issues. Id. at p. 41. Further, Mr. Fava failed to identify any scientifically accepted method or technique he used to make assessments regarding mold, the structure of the home, or the inhabitability of the home. Therefore, he is not qualified to present expert testimony regarding mold, structural engineering or the inhabitability of Plaintiff's residence and any opinions he has presented on those issues must be excluded.

**D.     Mr. Fava Testimony Should Be Excluded In Its Entirety**

Mr. Fava's Rule 26 Report makes two primary findings: first, the structure needs to be condemned or replaced; and second, that from a cost analysis standpoint, repair would exceed replacement cost. As shown above, Mr. Fava

admits he is not qualified to testify as an expert regarding the mold, structure and inhabitability of the home. As demonstrated above, the summary repair cost analysis in the Rule 26 Report is not sufficiently reliable to be considered expert testimony.

Exclusion of Mr. Fava's summary repair cost analysis necessarily includes exclusion of any and all references thereto, including Mr. Fava's summary opinion that "the repair cost including bringing the structure up to building code standards would exceed the replacement cost." Rule 26 Report at p. 1. More significantly, without a reliable repair cost estimate, Mr. Fava's replacement cost analysis loses all relevancy, probative value and helpfulness to the factfinder in understanding the evidence or determining a fact. In fact, Mr. Fava's replacement cost analysis, standing alone, would confuse a factfinder and be prejudicial to State Farm because Plaintiff has no reliable evidence: (1) that the residence is damaged beyond repair; (2) that the damage or condition necessitating repair was the result a covered incident rather than Plaintiff's own failure to protect his property; or (3) what the relative repair cost would be.

Mr. Fava's summary opinion that the repair cost would exceed the replacement cost is also unreliable under Rule 702. To qualify as expert testimony, Rule 702 requires that "the witness has applied the principles and methods reliably

to the facts of the case." Rule 702(3). Even assuming Mr. Fava properly calculated the replacement cost of Plaintiff's home following accepted principles and methods, he cannot be said to have *reliably* applied these principals because, as shown above, he did not apply those same principles and methods when conjuring his summary repair estimate. Thus, Mr. Fava's summary opinion comparing the relative costs of repair versus replacement is not reliable under Rule 702.

The expressed purpose of Mr. Fava's testimony is to provide a comparison between the cost to replace and the cost to repair Plaintiff's home. Fava Depo. at p. 24. Yet, no comparison can be made here without a reliable repair estimate. Moreover, without reliable expert testimony that the residence is uninhabitable; the replacement estimate is totally irrelevant. Rule 702 specifically states that expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Thus, even reliable expert testimony must be excluded where no logical relationship exists between the testimony and a fact or issue in dispute.

The party offering the expert testimony bears the burden of showing how it would be helpful to the factfinder. Rink v, 400 F.3d at 1292. In the present matter, Plaintiff only offers Mr. Fava's own unqualified testimony to make such a showing. However, absent the context that Plaintiff's residence must be

condemned and replaced, the replacement estimate serves no purpose in this litigation. Absent the context that the cost to repair Plaintiff's residence allegedly exceeds the cost to replace the home, the replacement estimate is does not "assist the trier of fact to understand the evidence or to determine a fact in issue". As shown above, Mr. Fava is not qualified to testify to either context that would make his replacement estimate would be relevant. Therefore, pursuant to Federal Rule of Evidence 702, Mr. Fava's reports and testimony are irrelevant and should be excluded.

**E.     Conclusion**

Mr. Fava is not qualified to testify as an expert as to the cost to repair Plaintiff's home, the mold allegedly present in Plaintiff's home, the structural condition of Plaintiff's home or the inhabitability of Plaintiff's home. Defendant hereby requests that Mr. Fava's testimony related to repair costs, mold, the structure of the home, and the inhabitability of the home be excluded.

Accordingly, Defendant further requests that Mr. Fava's testimony related to the replacement cost of the home be excluded as irrelevant, confusing and prejudicial. Mr. Fava's testimony comparing his summary repair estimate to his replacement estimate should also be excluded as unreliable and irrelevant.

Respectfully submitted this 7th day of January, 2011.

                    **MINOR, BELL & NEAL, P.C.**

**BY:** /s/ William F. Jourdain
      **WILLIAM F. JOURDAIN**
      **GA BAR NO. 405465**
      **THEODORE S. LU**
      **GA BAR NO. 516420**

      **ATTORNEYS FOR DEFENDANT**

P.O. BOX 2586
DALTON, GA 30722-2586
(706) 259-2586